## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

NANCY AGEE,

                       Plaintiff,

              -v-

MONSANTO COMPANY,
PHARMACIA CORPORATION,
FLEXSYS AMERICA CO.,
FLEXSYS AMERICA L.P.,
APOGEE COAL COMPANY, LLC,
and SOLUTIA, INC.,

                       Defendants.

Civil Action No. <u>3:09-1336</u>
(Removed from the Circuit Court of
Putnam County, West Virginia
Civil Action No. 09-C-235)

### <u>NOTICE OF REMOVAL</u>

COME NOW Defendants Monsanto Company ("Monsanto"), Pharmacia Corporation ("Pharmacia"), Flexsys America Company, Flexsys America, LP, Apogee Coal Company, LLC ("Apogee"), and Solutia, Inc. ("Solutia")  (collectively "Defendants") and file pursuant to 28 U.S.C. § 1446 their Notice of Removal of this action from the Circuit Court of Putnam County, West Virginia, wherein it is now pending, to the United States District Court for the Southern District of West Virginia, and would respectfully show this Court as follows:

### I.      BACKGROUND

1.      On or after November 20, 2009, the Calwell Practice PLLC ("Plaintiffs' Counsel") served on Defendants a Complaint filed in the Circuit Court of Putnam County, West Virginia (the "Complaint")[1], on behalf of Plaintiff Nancy Agee ("Plaintiff").

---

[1] The Complaint is annexed hereto as part of Exhibit 1.  *See* paragraph 43, *infra*.

2.     Plaintiff alleges that dibenzo dioxins and dibenzo furans, including 2,3,7,8-tetrachlorodibenzoparadioxin (collectively referred to as "dioxins/furans"), originating from Monsanto's former chemical plant in Nitro, West Virginia (the "Nitro Plant") have contaminated the air and property in and around the Nitro Plant, and that exposure to said dioxins/furans caused Plaintiff to develop cancer.  Complaint, at ¶ 2.  Plaintiff alleges that said dioxins/furans were a byproduct of Monsanto's production of the herbicide 2,4,5-T trichlorophenoxyacidic acid ("2,4,5-T"), a process which took place at the Nitro Plant allegedly between 1949 and 1970. Complaint, at ¶ 4.

3.     The instant Complaint is one of approximately one-hundred-and-sixty-seven (167) virtually identical complaints filed in the Circuit Court of Putnam County and served collectively on Defendants by Plaintiffs' Counsel on or after November 20, 2009.[2]  The complaints are boilerplate and the allegations within them are not specific to the plaintiffs upon whose behalf they have been filed.  Thus, the type of cancer from which Plaintiff allegedly suffers is unknown, as is the approximate date on which it allegedly developed.  Nor do the Complaints illuminate how any particular plaintiff may have been exposed to dioxins/furans. No property address is provided, and it is unclear from the face of the complaint whether the plaintiff currently resides or formerly resided in or near Nitro, West Virginia, or whether plaintiff's alleged contact with dioxins/furans came about through some other connection to that geographic area.  Because there are no allegations concerning the circumstances under which the Plaintiff allegedly came into contact with Monsanto's dioxins/furans, the timeframe during which the plaintiff believes such exposure occurred also is unknown.

---

[2] Approximately six (6) of these cases have already been dismissed voluntarily by Plaintiffs' Counsel.

4.     The 167 cases served on or after November 20, 2009, including the instant case, are not the first cases filed by Plaintiffs' Counsel in the Circuit Court of Putnam County wherein plaintiffs allege that dioxins/furans generated by Monsanto at the Nitro Plant have caused them to develop cancer.  Indeed, Plaintiffs' Counsel previously filed seventy-seven (77) such actions in October 2007 and April 2008.  Approximately thirty-five (35) of these earlier-filed actions are pending in the Circuit Court of Putnam County.[3]

5.     To provide further context to the Complaint, in addition to the aforementioned individual cases wherein plaintiffs allege that they have developed cancer, Plaintiffs' Counsel in or about 2000 and 2004 also filed two class actions arising from the same general allegations of fact – Monsanto's alleged creation of dioxin/furan-contaminated waste as a byproduct of its historical production of 2,4,5-T, and its alleged dispersion of those contaminants throughout the Nitro, West Virginia area.  In the class action styled *Robert Carter et al v. Monsanto Company et al.*, Civil Action No. 00-C-300 ("*Carter*"),[4] filed in the Circuit Court of Putnam County on August 2, 2000, plaintiffs seek recovery for property damage allegedly resulting from Monsanto's alleged contamination of Manila Creek and adjoining waterways with dioxins/furans generated as a byproduct of Monsanto's 2,4,5-T manufacturing process.  In the class action styled *Zina Bibb et al. v. Monsanto Company et al.*, Civil Action No. 04-C-465 ("*Bibb*"),[5] filed in the Circuit Court of Putnam County on December 17, 2004, plaintiffs seek recovery for property damage and medical monitoring costs arising from Monsanto's production of 2,4,5-T contaminated with dioxins/furans, and its alleged dispersion of said dioxins/furans

---

[3] The remainder of the cases – indeed, the majority of them – were voluntarily dismissed by Plaintiffs' Counsel without prejudice, after the plaintiffs in those cases would apparently not comply with discovery requests.

[4] A copy of the Fourth Amended Complaint filed in the *Carter* class action is attached hereto as Exhibit 2.

[5] A copy of the Complaint (without exhibits) filed in the *Bibb* class action is attached hereto as Exhibit 3.

into the air.  Like the earlier filed group of individual cancer claims, the two class actions also are pending in the Circuit Court of Putnam County.[6]

## II.    JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

6.    Monsanto exercises its right under 28 U.S.C. §§ 1332 and 1441 to remove the above-captioned matter from the Circuit Court of Putnam County, West Virginia.

7.    Pursuant to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States…." 28 U.S.C. 1332(a).  Moreover, pursuant to 28 U.S.C. § 1441, such an action may be removed to the United States District Court for the district and division embracing the location where the action is pending in State Court. 28 U.S.C. 1441(a).

8.    The amount in controversy requirement is undoubtedly satisfied in this case. "The amount in controversy, if not specified in the complaint, must be determined on the likely monetary relief that may be granted to the plaintiffs if they succeed on all of their claims asserted in good faith." *Ashworth v. Albers Medical, Inc*., 395 F.Supp.2d 395, 413 (S.D.W.Va. 2005). Plaintiff seeks unspecified compensation for "past, present and future medical bills; lost wages; past, present, and future pain and suffering, mental anguish, and loss of enjoyment of life." Complaint at ¶ 113.  Plaintiff also seeks unspecified punitive damages.  *Id.* at ¶ 114.  Under such circumstances, courts readily find that satisfaction of the amount in controversy requirement is apparent on the face of the complaint.  *See, e.g., Ashworth*, 395 F.Supp.2d at 413-14 (holding that the amount in controversy requirement would be satisfied based upon compensatory

---

[6] Plaintiffs' Counsel, however, has sought voluntary dismissal of the *Carter* class action.  A Preliminary Dismissal Order was entered in that case on October 29, 2009, pending notice of the dismissal to the class members.

damages *alone*, even if plaintiff had not sought punitive damages, where plaintiff had allegedly sustained severe and permanent injury resulting in lost wages and other economic damages after ingesting counterfeit medication).

### A.    Complete Diversity Exists Among the Named Parties

9.    Notwithstanding the aforementioned paucity of information in the Complaint, upon information and belief, Plaintiff is a citizen of the State of West Virginia.

10.    The Complaint asserts that "defendant Apogee Coal Company, LLC...is a West Virginia corporation with its principal place of business in the State of West Virginia." Complaint, at ¶ 15.  In addition to the obviously erroneous assertion that Apogee Coal Company, LLC ("Apogee") is a *corporation*, Plaintiffs' assertions concerning Apogee's citizenship also are incorrect.

11.    A Limited Liability Company ("LLC") is deemed, for purposes of diversity, to be a citizen of any state in which one of its members may be deemed a citizen.  *Shonk Land Co., LLC v. Ark Land Co.,* 170 F. Supp. 2d 660, 661-62 (S.D.W. Va. 2001).  Apogee's sole member is New Trout Coal Holdings, LLC, whose sole member in turn is Magnum Coal Company ("Magnum"), which is incorporated in the State of Delaware.  As a corporation, Magnum is deemed a citizen of both its state of incorporation as well as its principal place of business.  *See* 28 U.S.C. 1332(c)(1).

12.    In 2008, Magnum became a wholly owned subsidiary of Patriot Coal Corporation ("Patriot"), which, as this Court has recently determined, has its principal place of business in the State of Missouri.  *See* Memorandum Opinion and Order Denying Motion to Remand,  *Young v. Eastern Associated Coal*, *LLC*, 2:08-cv-00327, at 8-14 (August 14, 2008).

13.    Magnum has no employees; it serves merely as one of several intermediary entities through which Patriot owns and controls its national mining operations.  Magnum's presence in West Virginia since January 1, 2009, has been in form only, to the almost total exclusion of any substantive activity.  It holds a pre-2008 lease of office space in Charleston, but does not pay the rent and does not occupy the space.  Its name was removed from signs in 2008. Magnum collects payments due from one coal purchaser, but did not own the coal which was sold and promptly remits the proceeds to another entity.  Magnum's corporate records are kept in St. Louis, Missouri.   In fact, its sole shareholder (Patriot) and directors' meetings are documented by unanimous written agreements in lieu of formal meetings.

14.    Insofar as Magnum may once have been, but has ceased to be, an active corporation in the State of West Virginia, Magnum might appropriately be considered a citizen only of its state of incorporation, Delaware.  *See Athena Automotive, Inc. v. DiGregori,* 166 F.3d 288 (4th Cir. 1999) (affirming lower court's finding of diversity jurisdiction where Defendants were Maryland citizens and plaintiff had formerly operated only in Maryland but had become inactive-although still in existence-well before commencement of action, holding that the inactive corporate plaintiff should be considered a citizen *only* of its state of incorporation, Georgia).[7]   Under the foregoing facts, the Courts might also find that Magnum could additionally be considered a citizen of the State of Missouri.  *See MacGinnite v. Hobbs Group, LLC*, 420 F.2d 1234, 1237-40 (11th Cir. 2005) (where "defendant corporation…once operated in the same state as the plaintiff but has since been purchased by and integrated into an out-of-state corporation as a holding company)," Defendant was deemed a citizen of the state where acquiring company

---

[7] Apogee recognizes that it was not totally inactive in August, 2009, to the same degree that Athena Automotive, Inc. was in Maryland, but given the dearth of activity, the Court can apply the same principles to reach the same result.

maintained its principle place of business, and thus, there was diversity jurisdiction).  In any event, in light of the fact that Magnum-indirectly the sole Member of Apogee-is a citizen of Delaware and *possibly* also a citizen of Missouri, Apogee arguably is a citizen of only those two states-not West Virginia, as Plaintiff asserts.

15.    Plaintiff does not dispute that all other Defendants' principal places of business are located in a state other than West Virginia.[8]  *See* Complaint, at ¶¶ 11-14, 16.  Furthermore, Monsanto, Solutia, Pharmacia, and Flexsys America Company are each incorporated in Delaware.

16.    In light of the foregoing, complete diversity exists in this action and removal pursuant to 28 U.S.C. §§ 1332 and 1441 is appropriate.  Venue for purposes of removal is proper in this district court because this district and division embrace the place where the removed action has been pending.  28 U.S.C. § 1441(a).

**B.    Plaintiffs' Counsel's Fraudulent Joinder of Apogee**

17.    Even assuming *arguendo* that Apogee could be considered a "citizen" of West Virginia – and as outlined above, it is not – removal to this Court pursuant to 28 U.S.C. §§ 1332

---

[8]  It should be noted here that Defendants take issue with a number of other allegations concerning Defendants' principal places of business, although none of the remaining discrepancies are jurisdictionally significant in this case.  First, Plaintiff alleges that Pharmacia's principal place of business is New York.  Complaint, at ¶ 12.  This assertion, however, is erroneous – Pharmacia's principal place of business is New Jersey.  *See McNair v. Monsanto Co.,* 279 F.Supp.2d 1290, 1294 (M.D.Ga. 2003) ("Pharmacia's principle place of business is the State of New Jersey."); *Pharmacia Corp. v. Alcon Laboratories, Inc.,* 201 F.Supp.2d 335, 339 (D.N.J. 2002) ("Pharmacia Corporation is a Delaware corporation with its principal place of business located at 100 Route 206 North, Peapack, New Jersey 07977.").  Second, Plaintiff erroneously asserts that Flexsys America Company's principal place of business is the State of Ohio (Complaint, at ¶ 13), when in fact, it is the State of Missouri.  Finally, Plaintiff erroneously characterizes Flexsys America LP as a *corporation*, and states that Ohio is its principal place of business.  Complaint, at ¶ 14.  Flexsys America LP is, of course, a limited partnership.  As such, its citizenship is equal to that of each of its partners.  *Lincoln Property Co. v. Roche***,** 546 U.S. 81, 84 n.1 (2005).  Flexsys America LP's partnership consists solely of two Defendants in this case – Solutia and Flexsys America Company.  Because each of these entities is incorporated in Delaware and has its principal place of business in Missouri, Flexsys America LP is a citizen of Delaware and Missouri.

and 1441 is appropriate on the basis of fraudulent joinder.  It is clear that Plaintiffs' Counsel's sole purpose for joining Apogee as a Defendant in this case was to defeat federal diversity jurisdiction, notwithstanding the fact that this attempt was premised on a miscalculation of Apogee's true citizenship.

18.    The citizenship of a defendant which has been fraudulently joined is disregarded for purposes of the jurisdictional analysis.  *See Wygal v. Litton Loan Servicing LP,* 5:09-cv-00322, 2009 WL 2524701, at *2 (S.D.W.Va. Aug. 18, 2009).  A defendant will be deemed fraudulently joined where "there is no possible successful cause of action against [that defendant] or where the complaint pled fraudulent facts."  *Wyatt v. Charleston Area Medical Center, Inc.*, 2:09-cv-00685, 2009 WL 2215122, at *2 (S.D.W.Va. July 20, 2009).  Here, Plaintiffs' Counsel is without basis for asserting the facts which form the premise of the claim against Apogee.

19.    The Complaint asserts that Apogee is the successor in liability to a company that owned or controlled a "dump site" located on Manila Creek near the town of Nitro West Virginia.  Complaint, at ¶¶ 31, 74-75.  The apparent theory of Plaintiff's case against Apogee is that one of its predecessors allowed Monsanto to enter this Manila Creek site – allegedly owned or controlled by the predecessor company – and burn dioxin-contaminated wastes at that location.  *See id*.

20.    Upon information and belief, however, Plaintiffs' Counsel lacks a reasonable evidentiary foundation for asserting that *anyone*, let alone Monsanto, specifically, was burning dioxin-contaminated wastes at any time at the Manila Creek site, such that counsel's inclusion of

8

this assertion in the Complaint may constitute a violation of Rule 11 of the West Virginia Rules of Civil Procedure.[9]

21.     An examination of the pleadings filed by Plaintiffs' Counsel in the two previously-filed class actions (*Carter* and *Bibb*) speaks to the frivolity of the Complaint's factual assertions concerning the alleged burning of dioxin-contaminated waste at the Manila Creek site.[10]  The complaint in the *Bibb* class action – a case which is predicated, like the instant case, on the airborne dispersion of dioxin throughout the Nitro, West Virginia area – makes no mention of any burning of dioxin contaminated waste at Manila Creek.  In fact, Apogee is not even a named defendant in that case.  The complaint in the *Carter* class action, in which Apogee *is* a named defendant, focuses entirely on Monsanto's alleged dumping of dioxin contaminated waste at the Manila Creek site – yet, like the *Bibb* complaint, it contains not even a mention of any alleged burning there.  Defendants are unaware of any evidence of burning at Manila Creek unearthed through discovery in the related class actions upon which this allegation could properly be premised.  Rather, it seems clear that this allegation is based on unwarranted conjecture, raised for the sole purpose of justifying the joinder of a defendant that Plaintiffs' Counsel erroneously believes will frustrate diversity jurisdiction.[11]

_____

[9]   The West Virginia state court rule is almost identical to its counterpart in the Federal Rules of Civil procedure, insofar as it requires that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  W. Va. R. Civ. P. 11.

[10]   In determining whether a defendant has been fraudulently joined, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available."  *Carden v. Wal-Mart Stores, Inc.*, 574 F.Supp.2d 582, 589 (S.D.W.Va. 2008) (*quoting AIDS Counseling & Testing Centers v. Group W. Television, Inc.,* 903 F.2d 1000, 1003 (4th Cir.1990)).

[11]   As further evidence that Plaintiffs' Counsel does not actually believe that there exists a valid claim against Apogee, on October 9, 2009, Plaintiffs' Counsel filed in New York state court a complaint that is identical in almost every way to the 167 complaints recently filed in West Virginia.  The case, *Spaulding v. Monsanto et al.*, 1:09-cv-9470, is currently pending before the U.S. District Court for the Southern District of New York.  A copy of the complaint filed in the Spaulding case is attached hereto at Exhibit 4.  Only the alleged injury in the *Spaulding* case – peripheral neuropathy – differs from the West Virginia cases; the alleged underlying events giving rise to the

22.     In light of the fact that Plaintiff's claim against Apogee is erroneous and relies on arbitrary factual allegations, even if complete diversity did not exist among all named parties in this case, Apogee's citizenship should be ignored for purposes of determining jurisdiction because it has been fraudulently joined.

### III.     JURISDICTION PURSUANT TO 28 U.S.C. § 1442

23.     This action also is removed to this Court pursuant to the provisions of 28 U.S.C. § 1442, the federal officer removal statute.   Removal is appropriate under 28 U.S.C. § 1442(a)(1) for suits against federal officers and persons "acting under" them for their acts "under the color of such office." 28 U.S.C. § 1442(a)(1) is "meant to protect the federal government from the interference with its operations that would occur were a state able to haul federal officers acting within the scope of their authority into state court." *Campbell v. Brook Trout Coal, LLC*, No. 2:07-0651, 2008 WL 4415078, at *3 (S.D.W.Va. Sept. 25, 2008).   As fully explained below, Monsanto potentially faces liability in this case arising from actions taken under the aegis of the federal government.   Monsanto is entitled to assert in federal court the government contractor defense[12] as well as the defense of immunity under the Defense Production Act.

### A.     The Federal Government's Direction and Control Over Production of 2,4,5-T at the Nitro Plant

24.     For many years within the time period pertinent to this case, the Nitro Plant was engaged primarily – and at times exclusively – in the business of manufacturing 2,4,5-T for

---

claimed injury is purportedly the same.  However, notwithstanding the fact that the *Spaulding* complaint references the alleged conduct of the "coal company defendant," Plaintiffs' Counsel did not name Apogee as a defendant in that case.  *See* Exhibit 4 at ¶ 29.

[12] The government contractor defense, as elucidated by the Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 517 (1988), stands for the proposition that a plaintiff cannot circumvent the government's immunity for discretionary functions by suing the private companies with which the government contracts. *Isaacson v. Dow Chemical Co.*, 517 F.3d 76 (2d Cir. 2008), *cert denied,* 2009 WL 498257 (U.S. March 2, 2009).

inclusion in the military defoliant Agent Orange.  2,4,5-T was the most vital ingredient in Agent Orange and the federal government exercised direct control over Monsanto's production of it.

25.     During the Vietnam War era, the United States government began placing orders for Agent Orange with Monsanto in rapidly rising quantities and with escalating urgency.  In fact, in the mid-1960s, the government invoked its powers under the Defense Production Act of 1950, Pub. L. No. 81-774, 64 Stat. 798 (1951) (codified at 50 U.S.C. § 2061 *et seq.*) to compel Monsanto, and other 2,4,5-T manufacturing companies, to satisfy all government orders for 2,4,5-T. *See* Exhibits 5, 6, and 7 annexed hereto.  By 1966, the federal government's need for 2,4,5-T had grown so overwhelming that it effectively commandeered the entire domestic output of 2,4,5-T – including that which was produced at the Nitro Plant.  *See* Proof Brief for Defendants-Appellees on Removal, 05-1820-CV, p. 8-9, 29 (2d. Cir. Feb. 6, 2006) ("Proof Brief"), annexed hereto as Exhibit 8.  Monsanto was obligated to treat its Defense Order for 2,4,5-T as a *force majeure* event for purposes of cutting back or altogether ceasing shipments to all other customers that had contracted with Monsanto to receive 2,4,5-T. *See* Exhibit 9 annexed hereto.  In order to meet the federal government's overwhelming demand for 2,4,5-T, Monsanto also was compelled to modify its Nitro Plant operations.  *See* Exhibit 10 annexed hereto.

26.     The United States government in fact issued detailed and precise specifications to Monsanto for the production of the 2,4,5-T that would be used to manufacture Agent Orange. *See* Exhibits 11, 12, 13, and 14 annexed hereto.  These specifications set forth, among a number of other aspects of the production process, precisely which chemical ingredients could be used for the government's 2,4,5-T acid and in what amounts.

27.     Moreover, the Department of Commerce, Business and Defense Services Administration directed Monsanto to provide it with monthly reports of the total production,

total shipments, shipments against rated orders, and end of month inventory of 2,4,5-T produced at the Nitro Plant.  *See* Exhibits 6 and 15 annexed hereto.

28.      In light of the foregoing, this Court has previously concluded that "the federal government and its officers were actively involved in the defendants' 2,4,5-T production at the Nitro Plant." *See* Order Granting Plaintiffs' Motion to Remand, 03:08-cv-01359 (June 19, 2009 Order) at 20, annexed hereto as Exhibit 16.  Indeed, a review of Monsanto's prior removal of the earlier filed related individual cancer cases and class actions, as well as this Court's rulings in that vein, aids in illuminating why the instant case is properly removed pursuant to 28 U.S.C. § 1442(a)(1).

> **B.      This Court's Findings Concerning Monsanto's Prior Removal of the Related Cases**

29.      The *Bibb* class action, the *Carter* class action, and all of the earlier filed individual cancer cases were simultaneously removed to this Court on November 21, 2008. Monsanto removed these cases pursuant to 28 U.S.C. § 1442(a)(1) (among other bases for removal) on the grounds that they implicated Monsanto's production of 2,4,5-T at the direction of the United States government during the Vietnam War era.

30.      Between November 24, 2008 and December 1, 2008, Plaintiffs' Counsel moved to remand each of these actions on the basis that removal was untimely under 28 U.S.C. § 1446(b).  Addressing *Bibb* and the individual cancer cases, the Court opined that "[i]t is unequivocal that plaintiffs' claims include[d] those based on [2,4,5-T] production processes controlled by the federal government."  *See* Order Granting in Part and Denying in Part Plaintiffs' Motion To Remand, 03:08-cv-01358 (Dec. 19, 2008), at 27, annexed hereto as Exhibit 17.  Nonetheless, the Court found that Monsanto was aware of this basis for removal more than thirty days prior to the filing of the Notice of Removal, opining that the *Bibb*

complaint and the individual cancer complaints implicated production-based liability on their face.  *See id.* at 25-30.   Thus, on December 19, 2009, the Court remanded *Bibb* and the individual cases to the Circuit Court of Putnam County.  *Id.* at 28-30.

31.    Notwithstanding the Court's remand of the *Bibb* class action and the individual actions, the Court retained jurisdiction over the *Carter* class action at that time.  *See id.* at 31-32. The Court found that Monsanto's removal of *Carter* was timely because, for many years, the allegations in that case appeared to be based solely upon Monsanto's alleged 2,4,5-T waste disposal activities, but more recently, Plaintiffs' Counsel had suggested that the case more broadly implicated the 2,4,5-T manufacturing process.  *See id.* at 24-25, 31-32.  The Court noted that in some instances, other courts have found the distinction between disposal-based and production-based allegations to be jurisdictionally significant.  *See id.* at 23 n.8., 32.

32.    On March 20, 2009, Plaintiffs' Counsel filed a second motion to remand the *Carter* class action, this time on the grounds that the Court lacked subject matter jurisdiction over the case.  In its June 19, 2009 Order addressing this motion, the Court reiterated "that the defendants were acting under federal direction when it produced 2,4,5-T at the Nitro Plant for some period during the 1960s." Order Granting Plaintiffs' Motion to Remand (June 19, 2009 Order) at 17.  The Court based this finding on evidence which demonstrated that the federal government was "actively involved" in the production of 2,4,5-T at the Nitro Plant, that the United States Department of Defense for a time ostensibly commandeered the Nitro Plant's 2,4,5-T production capabilities in their entirety, and that the 2,4,5-T produced for use in Agent Orange was manufactured according to government specifications.  *Id.* at 19-22.  However, the Court found that the *Carter* class action was strictly confined to waterborne contamination resulting from Monsanto's alleged disposal of dioxin-contaminated waste at the Manila Creek

13

dump site.  *Id.* at 17.  Thus, notwithstanding the Court's findings regarding the federal government's control over the production process, which generated the alleged dioxin at issue, the Court remanded the *Carter* class action because it found "no causal nexus between the defendants' production and distribution of 2,4,5-T at the Nitro Plant under federal control and the defendants' disposal of 2,4,5 -T waste at the Manila Creek dump site."  *Id.* at 25.

     **C.**     **Plaintiff's Counsel's Failed Attempt to Plead Around Federal Jurisdiction Based Upon This Court's Prior Rulings in the Related Actions**

     33.     In light of this Court's prior rulings as described above, at the time Plaintiffs' Counsel drafted the instant Complaint, they were armed with the knowledge that the *Bibb* complaint and the complaints in the earlier filed individual cancer cases contained production-based allegations that would have supported jurisdiction under 28 U.S.C. § 1442(a)(1) but for untimeliness.  Plaintiffs' Counsel also was informed by the Court's prior remand opinions that a case, like *Carter*, which appeared (at least on its face) to be solely about Monsanto's waste disposal practices might not be subject to removal under 28 U.S.C. § 1442(a)(1), for want of a "causal nexus" between the government's involvement and the activities alleged to have caused the harm.

     34.     Consequently, Plaintiffs' Counsel have attempted to make their latest round of individual Complaints, including the instant Complaint, "removal-proof" by trying to focus on Monsanto's disposal practices, or more specifically, its alleged open "pit" burning of dioxin-contaminated waste.  In their efforts to avoid federal jurisdiction, Plaintiffs' Counsel often repeat the mantra that their "claims are based entirely on the Defendants' disposal practices regarding dioxins/furans contaminated waste."  Complaint, at ¶ 2.

     35.     Plaintiffs' Counsel's manipulation of the pleadings is a perversion of the Court's prior rulings, and cannot serve to frustrate this Court's jurisdiction.  A juxtaposition of one of

the earlier filed cancer complaints[13] with the instant Complaint illustrates why this is so.  For example, the following allegation appears in the earlier filed complaints:

> During the years that Old Monsanto was operating its trichlorophenol plant, it adopted an unlawful practice of disposing of dioxin waste materials by a continuous process of open "pit" burning. This practice was largely denied by Old Monsanto whose representatives characterized the practice as an "incineration process" when asked by regulatory authorities. *Further, the manufacturing process itself was dusty and Old Monsanto's dust control was haphazard.* Additionally, dioxin laden liquid wastes were sewered directly to the Kanawha River during the entire relevant time period and continues today.

Exhibit 18, at ¶ 87 (emphasis added).  The counterpart to this allegation appears at paragraph 78 of the instant Complaint.  The language concerning open "pit" burning remains precisely the same, but the emphasized text – a production-based allegation – has been conspicuously removed.  *See* Complaint, at ¶ 18.   Additional examples of the purging of production-based allegations are abundant and obvious, and need not be articulated here.

        36.     The perverse result of Plaintiffs' Counsel's tinkering is readily apparent.  The plaintiffs in the earlier filed cases and the newly filed cases, including the instant case, all allege to suffer from the same type of injury – cancer.  Moreover, upon information and belief, the plaintiffs in the earlier filed cases and the newly filed cases are (or were at some point) situated in the same basic geographic location.  That is, one of the "new" plaintiffs may well be, for all intents and purposes, the neighbor of one of the "old" plaintiffs.  Yet because of Plaintiffs' Counsel's apparent desire to litigate the entirety of its caseload in state court, these neighbors will not be entitled to pursue the same claims.  The neighbor whose filing occurred more recently cannot recover for any contamination that may have resulted from direct releases from

---

[13] A copy of the Amended Complaint filed in *Mary Ward v. Monsanto et al.*, Civil Action No. 07-C-413, typical of the earlier-filed complaints, is attached hereto as Exhibit 18.

Monsanto's production process, but his or her earlier-filing neighbor, theoretically, is unrestricted in that regard.  That is the mischief wrought by Plaintiffs' Counsel's tactics.[14]

37.    However, it appears that Plaintiffs' Counsel recognized that to *truly* limit its newer clients' (including Plaintiff's) claims to disposal would be untenable.  Indeed, upon closer inspection, this apparent limitation is mere artifice.

38.    Plaintiffs' Counsel has discretely inserted into the Complaint what appears to be a "safety net" designed to provide them with the flexibility to pursue production-based theories of liability, notwithstanding the seemingly express limitations articulated elsewhere in the Complaint.  Paragraph 87 of the Complaint alleges that "[a]s a direct and proximate result of the conduct of the Defendants as aforesaid, *but not limited thereto*, the Plaintiff has been injured and caused to suffer cancer and as a consequence and have been damaged in ways and in amounts hereinafter set forth."  Complaint, at ¶ 87 (emphasis added).  Thus, *on its face*, the Complaint is *not* limited to disposal-based allegations.  To determine what additional allegedly culpable conduct Plaintiffs' Counsel has in mind, the Court need look no further than the broader conduct at issue in the earlier filed individual cancer complaints.[15]

---

[14] Indeed, the tactic employed by Plaintiffs' Counsel in this case has profound implications on the continuing viability of the federal officer removal statute, and of the government contractor defense.  If plaintiffs are permitted to extricate discrete portions of a defendant's operation and blame their injuries on that particular conduct, plaintiffs will in every case pick and choose portions of that broader course of conduct which were less subject to government direction, thus avoiding federal jurisdiction based on the government contractor defense.  Plaintiffs' Counsel's attempt to do that here is particularly egregious, where reference to the earlier filed cancer cases highlights the disconnect between the underlying reality of Plaintiff's grievance and the tortured limitations of their pleading.  If Plaintiffs' Counsel's tactic is permitted to succeed, private entities will be discouraged from performing critical government work where it is clear that immunity will not extend to conduct not specifically ordered by the federal government, even if such conduct – such as the otherwise lawful disposal of waste material – is necessarily and obviously attendant to the activities specified by the government contract.

[15] The Court also may look to Plaintiffs' Counsel's apparent efforts to bring the possibility of recovery for production-based contamination into this case through the back door.  To wit, Plaintiffs' Counsel has filed in the Circuit Court of Putnam County a motion, which applies to all of the individual cancer cases, both new and old, seeking a bifurcated trial of these cases.  *See* Plaintiff's Motion for Adoption of Case Management Plan and Bifurcation of Issues at Trial, August 4, 2009, attached hereto as Exhibit 19.  Critically, Plaintiffs' Counsel propose a unified "Phase I" in which issues of Monsanto's liability should be adjudicated as to *all* of the cancer cases in one fell swoop, since these issues are purportedly common to all of the cases.  Plaintiffs' Counsel then propose that

16

39.     In light of the fact that Plaintiff seeks to hold Monsanto liable for injuries allegedly resulting, at least in part, from work performed by Monsanto at the behest of the federal government,  there is removal jurisdiction over this action under 28 U.S.C. § 1442(a)(1). Plaintiffs' Counsels' attempts to deprive this Court of jurisdiction through clever pleading are to no avail.

### IV.     JURISDICTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1441

40.     There is original jurisdiction over this action under 28 U.S.C. § 1331 because "[Plaintiffs'] right to relief necessarily depends on resolution of a substantial question of federal law." *Christianson v. Colt Indus.*, 486 U.S. 800, 808 (1988) (*quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).  The federal law of military procurement displaces state tort law and is a necessary element in Plaintiffs' claims.  *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).  There also is original jurisdiction over this action under the doctrine of complete federal preemption.  *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).  *See also Arkansas-Platte & Gulf P'ship v. Van Waters & Rogers, Inc.*, 959 F.2d 158 (10th Cir.), *remanded*, 506 U.S. 910 (1992), *on remand*, 981 F.2d 1177 (10th Cir. 1993) (state tort actions based on labeling and alleged failure to warn are preempted by FIFRA). Accordingly, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

---

issues particular to individual cases – such as medical causation – be tried separately in "Phase II" on a case-by-case basis.

A universally-applied adjudication of Monsanto's liability, however, means that plaintiffs in the individual cases filed in August 2009, including the instant case, would have the opportunity to recover for injuries caused by production-based exposure, notwithstanding the fact that these plaintiffs seemingly disclaimed such liability in their complaints.  As such, Plaintiffs' Counsel's efforts to obtain a unified trial on liability gives color to the unspecified conduct alluded to in paragraph 87 of the Complaint – it is clear that Plaintiffs' Counsel has no real intention of relinquishing Plaintiff's ability to recover for production-based exposures.

### V.   COMPLIANCE WITH PROCEDURAL REQUIREMENTS

41.     All Defendants join in the removal of this action from the Circuit Court of Putnam County, West Virginia to the United States District Court for the Southern District of West Virginia.

42.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).  All Defendants were served with a copy of the Complaint on or after November 20, 2009, less than thirty (30) days prior to the filing of this Notice of Removal.

43.     The certified docket sheet and pleadings, process, orders, and other filings in the state action are collectively annexed as Exhibit 1 hereto, as required by 28 U.S.C. § 1446(a) and Local Rule Civ. P. 3.4.

44.     Pursuant to the requirements of 28 U.S.C. § 1446(d), Monsanto has filed a copy of this Notice of Removal with the Clerk of the Circuit Court of Putnam County, West Virginia, where the Petition was originally filed.  A copy of the Notice of the filing of this Notice of Removal is attached hereto as part of Exhibit 1.  Prompt written notice of the filing of this Notice of Removal will also be served upon all adverse parties as required by 28 U.S.C. § 1446(d).

45.     Pursuant to 28 U.S.C. § 1446(a), undersigned counsel for Defendants acknowledges that this Notice of Removal is submitted pursuant to Rule 11 of the Federal Rules of Civil Procedure.

WHEREFORE, Defendant respectfully requests that this action proceed in this Court as properly removed thereto.

Dated: December 14, 2009.

Respectfully Submitted,

MONSANTO COMPANY, PHARMACIA CORPORATION, FLEXSYS AMERICA CO., FLEXSYS AMERICA L.P., APOGEE COAL COMPANY, LLC, and SOLUTIA, INC.

By Counsel.

s/ Charles M. Love, III
Charles M. Love, III (WV Bar No. 2254)
P. Michael Pleska (WV Bar No. 2919)
BOWLES RICE MCDAVID GRAFF & LOVE LLP
600 Quarrier Street
P.O. Box 1386
Charleston, West Virginia 25325-1386
(304) 347-1104
*Attorneys for Defendants*

and

James E. Tyrrell, Jr.
Elissa J. Glasband
PATTON BOGGS LLP
1185 Avenue of the Americas
30th Floor
New York, New York 10036
(646) 557-5100
*Attorneys for Defendant Monsanto Company*

**CERTIFICATE OF SERVICE**

I, Charles M. Love, III, of Bowles Rice McDavid Graff & Love LLP, counsel for Defendants, do hereby certify that I have electronically filed ***Defendants Notice of Removal***, Rule 7.1 Statements of Defendants Monsanto Company, Pharmacia Corporation, Flexsys America Co., Flexsys America L.P., Apogee Coal Company, LLC and Solutia Inc. with the Clerk of the Court using the CM/ECF system and which will be mailed by United States Mail this 14th day of December 2009, to:

> W. Stuart Calwell, Esq.
> David H. Carriger, Esq.
> The Calwell Practice
> Law & Arts Center West
> 500 Randolph Street
> Charleston, West Virginia  25302
> *Counsel for Plaintiff*

> By:  s/Charles M. Love, III
>       Charles M. Love, III (WV Bar No. 2254)
>       P. Michael Pleska (WV Bar No. 2919)
>       600 Quarrier Street
>       P.O. Box 1386
>       Charleston, West Virginia 25325-1386
>       *Attorneys for Defendant*

2785740.1